UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | | |
|---|---|---|
| ALEXANDRE FAYCAL JOUDE, et al., | | No. C 14-01656 LB |
| | Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | | |
| WORDPRESS FOUNDATION, et al., | | [Re: ECF No. 11] |
| | Defendants. | |

### INTRODUCTION

Plaintiffs Alexandre Fayçal Joude and Daniel Joude sued WordPress Foundation and Automattic, Inc. to compel them to take down an anonymously-written blog about Plaintiffs and their family. Complaint, ECF No. 1.[1] Plaintiffs dismissed WordPress from the action on April 2, 2014. Motion, ECF No. 11, at 8 n.1. Automattic removed the action to this court and now moves for an order granting judgment on the pleadings. *Id.* at 6. The court **GRANTS** Automattic's motion and dismisses all three claims.

### STATEMENT

#### I. BACKGROUND

Plaintiffs, both private individuals, are citizens and residents of France. Complaint, ECF No. 1-

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

2, ¶¶ 5-6. Defendant Automattic, a Delaware corporation with its principal place of business in California, hosts, maintains, and operates Wordpress.com. *Id.* ¶ 3.

### A. The Blog

In March 2014, Plaintiffs learned of a blog at the web address http://thejoudes.wordpress.com ("the Blog"). *Id.* ¶ 11. Titled "The Hoodwankers," the Blog is about Plaintiffs and other members of the Joude family and published anonymously. *Id.* ¶¶ 11, 13. From February 27, 2014 to March 8, 2014, an anonymous contributor posted a total of twelve separate entries. *See* McCoy Declaration, Ex. A, ECF No. 1-4, at 35-43. While some of the entries appear to state plain facts about Plaintiffs' family history, others contain negative remarks. *Id.* For example, a March 3, 2014 entry titled "God's Fundraisers" states that "We [the Joudes] obtain funds through deceit and fraud . . ." and "have defrauded victims out of at least 30 million Euros . . ." to support the "Legionnaires of Christ." *Id.* at 41.

Although all of the Blog's entries purport to be written by plaintiff Alexandre Fayçal Joude, Alexandre claims that he did not publish these entries and has never authorized anyone else to do so. Complaint, ECF No. 1-2, ¶¶ 21-22. On March 6, 2014, plaintiff Alexandre sent an email to Automattic via WordPress requesting that they take down the Blog because "the author of this blog has usurped my identity to publish defamatory information about family members with photos that I do not know how he was able to obtain." *Id.* ¶ 14; 3/7/14 Email, ECF No. 1-4, at 7. Later the same day, Automattic responded that they "were in no position to arbitrate content disputes" but would remove any content "found to be defamatory or illegal by a U.S. court of law" in a formal order from a United States court. *Id.*

### B. The French Defamation Order

On March 12, 2014, through counsel in France, Plaintiffs sought an order from the Tribunal de Grande Instance de Paris (the "High Court of Paris") directing Automattic and WordPress to remove the Blog. Compl., ECF No. 1-2, ¶ 15; Davis Declaration, Ex. A, ECF No. 1-3 at 17, *translated at* Ex. B., ECF No. 1-3, at 24. In their request, Plaintiffs stated that "the blog concerned lets it be imagined that it was written by one of the petitioners, in the current case, Mr. Alexandre Fayçal Joude. This is false, as Alexandre Fayçal Joude also affirms in the certification that he [wrote] on

1  March 7th, 2014 . . ." *Id.* at 17-21, *translated at* ECF No. 1-3 at 25-26.  Their request also stated
2  that "the blog concerned is manifestly malicious" and contains "statements without the slightest
3  element of proof in support." *Id.* at 26.  Plaintiffs further characterized the Blog's statements as
4  "purely and simply injurious," "false[]," and aimed at "harm[ing] the petitioners." *Id.*  Plaintiffs also
5  expressed concern regarding private family photos posted to the Blog and asserted that "[their]
6  placement online . . . constitutes an infringement on the rights to the image on both of the
7  petitioners . . ." *Id.*  Finally, Plaintiffs stated that they were both "businessmen with honorable
8  reputations" and "families and . . . children" and thus had a particular interest in seeing the Blog
9  removed. *Id.* at 27.

10     On the same day the Plaintiffs filed their request, the High Court of Paris granted it and issued an
11 order stating that Automattic and WordPress must "take all necessary or useful measures for the
12 immediate removal of the blog entitled 'Alexandre Fayçal Joude/the Hoodwankers' and 'Danny
13 Joude/the Hoodwankers'" within three months.  Complaint, Ex. A, ECF No. 1-2, at 12, *translated at*
14 Ex. B., ECF No. 1-2 at 14.

15     **C.  Wordpress.com Terms of Service**

16     The WordPress.com Terms of Service state that "Automattic will not be liable for any acts or
17 omissions by You, including any damages of any kind incurred as a result of such acts or
18 omissions."  McCoy Declaration, Ex. B, ECF No. 1-4, at 46, ¶ 1.  Regarding the "Responsibility of
19 Contributors," the Terms of Service provide that blog operators are "entirely responsible for the
20 content of, and any harm resulting from, that Content. . . . By making the Content available, you
21 represent and warrant that . . . your blog is not named in a manner that misleads your readers into
22 thinking that you are another person or company." *Id.* at 46, ¶ 2.

23     The Terms of Service reserve Automattic's authority to remove harmful or objectionable blog
24 content:

25     Automatic has the right (though not the obligation) to, in Automattic's sole discretion (i) refuse
    or remove any content that, in Automattic's reasonable opinion, violates any Automattic policy
26     or is in any way harmful or objectionable, or (ii) terminate or deny access to and use of the
    Website to any individual or entity for any reason, in Automattic's sole discretion.
27

28 *Id.* at 46-47, ¶ 2.  Concerning the "Responsibility of Website Visitors," the Terms of Service also

disclaim responsibility for the content of material posted to WordPress.com:

> Automattic has not reviewed, and cannot and cannot review, all of the material, including computer software, posted to the Website, and cannot therefore be responsible for that material's content, use or effects. By operating the Website, Automattic does not represent or imply that it endorses the material there posted, or that it believes such material to be accurate, useful or nonharmful. . . . Automattic disclaims any responsibility for any harm resulting from the use by visitors of the Website, or from any downloading by those visitors of content there posted.

*Id.* at 47-48, ¶ 6. Finally, Automattic states that they are not liable for user costs, damages, or fees:

> In no event will Automattic, or its suppliers or licensors, be liable with respect to any subject matter of this agreement under any contract, negligence, strict liability or other legal or equitable theory for: (i) any special, incidental or consequential damages; (ii) the cost of procurement for substitute products or services; (iii) for interruption of use or loss or corruption of data; or (iv) for any amounts that exceed the fees paid by you to Automattic under this agreement during the twelve (12) month period prior to the cause of action.

*Id.* at 49, ¶ 17.

## II. PROCEDURAL HISTORY

On March 24, 2014, Plaintiffs filed this suit in the Superior Court of the State of California for San Francisco County, raising three causes of action. Complaint, ECF No. 1-2, at 3. Plaintiffs seek declaratory relief (1) recognizing and enforcing the French Order directing Automattic and WordPress to remove the Blog, *id.* ¶¶ 25-30, and (2) establishing that Automattic and WordPress are bound by their own Terms of Service, *id.* ¶¶ 31-37. Plaintiffs' third cause of action alleges misappropriation of likeness. *Id.* ¶¶ 38-43. On March 25, 2014, Plaintiffs applied to the Superior Court for a temporary restraining order ("TRO") and an order to show cause requiring Automattic and WordPress to remove the Blog. Morton Declaration, Ex. 2, ECF No. 1-3, at 2-4. Automattic opposed the application, and the court denied it without issuing a written order. Notice of Removal, ECF No. 1, ¶ 2. On April 2, 2014, Plaintiffs dismissed WordPress without prejudice. Morton Declaration, Ex. 2, ECF No. 1-5, at 2-3.

On April 10, 2014, Automattic removed the Action to this court. Notice of Removal, ECF No. 1. Automattic asserted federal question jurisdiction for the first claim pursuant to the Securing the Protection of our Enduring and Established Constitutional Heritage ("SPEECH") Act, 28 U.S.C. §§ 4101, *et seq. Id.* ¶¶ 8-11. Automattic asserted supplemental jurisdiction for the second two

//

causes of action. *Id.* at 4. Now pending before the court is Automattic's motion for judgment on the pleadings as to all three claims. Motion, ECF No. 11.

## ANALYSIS

### I. FEDERAL RULE OF CIVIL PROCEDURE 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [defendant] is entitled to judgment as a matter of law." *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010).

Although a court is generally confined to the pleadings on a Rule 12(c) motion, "[a] court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

In its motion for judgment on the pleadings, Automatic asks the court to consider (1) an email to Automattic from plaintiff Alexandre Fayçal Joude and Automattic's response. (2) Plaintiffs' request to the High Court of Paris, (3) the French Order, and (4) Automattic's Terms of Service. Motion,

ECF Nos. 11-3, 11-4.  Because the French Order is attached to the complaint, *see* Complaint, Ex. A, ECF No. 1-2, at 12, *translated at* Ex. B., ECF No. 1-2 at 14, the court may consider it without taking judicial notice of the copy attached to Automattic's Motion.  As for the remaining documents Automatic urges the court to consider, because they are each referenced in the Complaint, form the basis of allegations contained therein, and their authenticity is not disputed by Plaintiffs, the court takes judicial notice of them.

## II. PLAINTIFFS' CLAIM TO ENFORCE THE FRENCH DEFAMATION JUDGMENT IS DISMISSED, AND THE COURT WILL EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' REMAINING STATE LAW CLAIMS

Plaintiffs' first claim is for declaratory relief to enforce the French Order to remove the Blog.  In their opposition, Plaintiffs state that they do not oppose Defendants' motion for judgment on the pleadings with respect to Plaintiffs' first claim.  Opp'n to Motion, ECF No. 13 at 4.  Furthermore, Plaintiffs are willing to dismiss this claim with prejudice.  *Id.*  Accordingly, the court grants Automatic's motion with respect to Plaintiffs' first claim and dismisses it with prejudice.[2]

Automatic removed the case to this court and asserted federal question jurisdiction based on the SPEECH Act of 2010, a federal statute which governs the enforcement of foreign defamation judgments in U.S. courts.  *See* Notice of Removal, ECF No. 1, ¶¶ 8-11.  Automatic alleged the court had supplemental jurisdiction over Plaintiffs' two other state law claims as those allegations "arise from the same common nucleus of operative fact" and that "[the] claims are so interrelated that Plaintiff[s] would ordinarily be expected to try them all in the same judicial proceeding."  *Id.* ¶¶ 12-13.

Having dismissed the only claim over which it has original jurisdiction, the court therefore has discretion to exercise supplemental jurisdiction over the remaining claims.  *See* 28 U.S.C. § 1367(a) (providing that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *see also* Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 2:571 (explaining that where the court dismisses the claim giving rise to original

---

[2] Given that Plaintiffs agree to dismiss this claim, the court need not decide whether the SPEECH Act prohibits enforcement of the French Order.

1  jurisdiction, supplemental jurisdiction continues with the court's discretion).  The court finds that
2  these two claims are so related to Plaintiff's first claim that they form part of the same case or
3  controversy.  Additionally, as discussed below, Plaintiffs' third claim implicates federal law, namely
4  Section 230 of the Communications Decency Act of 1996.  *See generally* Motion, ECF No. 11; 47
5  U.S.C. § 230.  Accordingly, the court will use its discretion to exercise supplemental jurisdiction
6  over the remaining state law claims to determine whether Automattic is entitled to judgment as a
7  matter of law.

### III. PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT FAILS

Based on a theory of breach of contract, Plaintiffs' second claim is that Automattic failed to abide by their own Terms of Service by failing to remove the Blog once they were informed it was written by an impostor.  Complaint, ECF No. 1-2, ¶¶ 31-37.  To state a claim for breach of contract in California, a plaintiff must allege the following elements: (1) existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) resulting damage.  *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Plaintiffs allege that they entered into a contractual relationship with Automattic when they agreed to the Terms of Service by using and accessing WordPress.com.  Complaint, ECF No. 1-2, ¶¶ 32-33; Opp'n to Motion, ECF No. 13, at 5.  Plaintiffs take the position that Automattic breached that contract by refusing to remove the Blog once informed that it was written by someone posing as plaintiff Alexandre.  *Id.* ¶ 35.  Finally, Plaintiffs contend that their personal and professional reputations have been damaged by Automattic's failure to remove the Blog.  *Id.* ¶ 23-24.  Alternatively, Plaintiffs claim that they are third-party beneficiaries of a contract between Automattic and the anonymous blogger.  Opp'n to Motion, ECF No. 13 at 5.  In that scenario, Plaintiffs allege that Automattic breached their Terms of Service contract with the anonymous blog owner by failing to remove the offending content.  *Id.*

Plaintiffs fail to state a claim for breach of contract.  A plaintiff cannot predicate a breach of contract claim on a defendant's terms of service where those terms did not commit the defendant to performing any particular action.  *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1260-61 (N.D. Cal. 2006); *see also Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 892 (2006) (holding that a

1 contract may provide a basis of liability for a defendant's violation of its terms only when the
2 defendant has promised to abide by them). In *Anthony*, a subscriber to an online dating service
3 maintained by Yahoo! Inc. sued Yahoo for breach of contract for, inter alia, "creating and
4 forwarding false and/or nonexistent [online dating] profiles." *Anthony*, 421 F. Supp. 2d at 1260.
5 Anthony alleged that by creating false profiles, Yahoo! breached its own terms of service, which
6 stated that "[j]ust like a real community, different people may have different opinions and
7 personalities in Yahoo! Personals." *Id.* Anthony also claimed that by sending him unsolicited
8 emails containing false profiles, Yahoo! violated its "Community Guidelines" which stated that
9 "[y]ou'll be happy to know that we do not allow spam, information gathering, or escort services."
10 *Id.* at 1261. Yahoo! moved to dismiss Anthony's breach of contract claim. Granting Yahoo!'s
11 motion to dismiss, the court found that the "real community" "language upon which Anthony relies
12 merely describes Yahoo!'s dating service and does not commit Yahoo! to performing or not
13 performing any particular action." *Id.* at 1260. The court also found that the Yahoo!'s Community
14 Guidelines "restrict[] what subscribers—not Yahoo!—can do on the site." *Id.* at 1261.

15 Here, Plaintiffs allege that they entered into a contract with Automattic by accessing
16 WordPress.com, performed by abiding by the Terms of Service, and suffered harm to their
17 reputations as a result. This does not establish a contract. Even assuming that Plaintiff adequately
18 pled the existence of a contract, the court concludes that Automattic did not breach the contract as a
19 matter of law because it never promised to remove blogs which mislead readers by impersonation.
20 The relevant portion of Automattic's Terms of Service under "Responsibility of Contributors" states
21 that "[b]y making Content available, you represent and warrant that: . . . your blog is not named in a
22 manner that misleads your readers into thinking that you are another person or company . . ."
23 McCoy Declaration, Ex. B, ECF No. 1-4, at 46 ¶ 2. The Terms of Service go on to state that
24 "*Automattic has the right (though not the obligation) to, in Automattic's sole discretion* (i) refuse or
25 remove content that, in Automattic's reasonable opinion, violates any Automattic policy or is in any
26 way harmful or objectionable . . ." *Id.* (emphasis added). Viewed in context, these terms are not
27 promises to remove content violating Automattic policy. By expressly asserting their discretion to
28 remove content, Automattic made clear that they did not intend to commit themselves to a particular

course of action.  Finally, the provision concerning the impersonation of others is titled "Responsibility of Contributors" and specifically restricts WordPress.com bloggers, not Automattic itself.  Nowhere in this provision does Automattic promise or otherwise obligate themselves to remove such content.

Plaintiffs' failure to articulate a cognizable legal theory with respect to Automattic's alleged breach is fatal to this claim.  *See Balistreri*, 901 F.2d at 699.  Plaintiffs cite no authorities to support their proposition that a plaintiff can predicate a breach of contract claim on a defendant's non-promissory representations.  *See* Opp'n to Motion, ECF No. 13.  Plaintiffs instead refer to a 2012 interview with the general counsel of Automattic regarding the company's complaint process and attach an exhibit in support.  Opp'n to Motion, ECF No. 13 at 5-6.  The court does not consider the document, which was not part of the complaint or otherwise incorporated by reference, *see Horsley*, 304 F.3d at 1135, and it does not alter the outcome in any event.

Finally, Plaintiffs' alternative theory that they are third-party beneficiaries also fails because even if Automatic committed to remove blogs violating the impersonation rules, Automattic did not promise to do so for the benefit of those impersonated or Plaintiffs in particular.  *See Souza*, 135 Cal. App. 4th at 891 (stating that "[t]he test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.").

In sum, the court finds that Plaintiffs have not stated a claim for breach of contract for the time period alleged in the complaint.[3]

The issue is whether the dismissal should be with or without prejudice.  These allegations do not establish a contract or a breach or even a promise.  The court cannot conceive of an amendment that would cure the shortcomings.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007).  That being said, ordinarily a court should dismiss a complaint without prejudice unless it determines that the pleadings could not possibly be cured by the allegation of other facts.  *See Lopez v. Smith*, 203

---

[3] As Plaintiffs' second claim regarding the Terms of Service is not sufficiently pled under a theory of breach of contract, the court need not address Automattic's argument that Section 230 of the Communications Decency Act of 1996 (CDA § 230) precludes this claim.  *See* 47 U.S.C. § 230.

1  F.3d 1122, 1127 (9th Cir. 2000).  For some of the equitable reasons discussed at the hearing, the
2  ongoing nature of the issue, and the standard in *Lopez*, the court dismisses the claim without
3  prejudice.  The claim looks to be a claim that ought to be made against the blogger, however, not
4  Automattic.

## IV.     PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF LIKENESS FAILS

6  Plaintiffs allege that Automattic commercially benefitted from misappropriating the Joudes'
7  names, likenesses, and identities by maintaining and hosting the Blog.  Compl., ECF No. 1-2, ¶ 40.
8  To state a common law claim for misappropriation of likeness in California, a plaintiff must
9  allege the following: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of
10 plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of
11 consent; and (4) resulting injury."  *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996).
12 Therefore, Plaintiffs must provide some factual allegations about Automattic's use of Plaintiffs'
13 identities, Automattic's appropriation of Plaintiffs' names or likenesses to Automattic's advantage,
14 Plaintiffs' lack of consent, and information on Plaintiffs' harm resulting from Automattic's
15 misappropriation.

16 Plaintiffs allege that by "maintaining, commenting on, hosting, and editing the Blog, Automatic
17 used the Joudes' names and likenesses, and identities . . ."  Compl., ECF No. 1-2, ¶ 39.  Plaintiffs go
18 on to claim that Automattic gained, among other advantages, a commercial benefit by using the
19 names, likenesses, and identities of Plaintiffs.  *Id.* ¶ 40.  Plaintiffs also contend that there was a lack
20 of consent as the misappropriation took place without Plaintiffs' involvement or permission.  *Id.*
21 Finally, Plaintiffs allege that Automattic's misappropriation of likeness and subsequent failure to
22 remove the Blog has harmed the reputations of the Plaintiffs and their family.  *Id.*

23 Assuming without deciding that Plaintiffs have sufficiently pled misappropriation of likeness,
24 their claim nevertheless fails as a matter of law because Section 230 of the Communications
25 Decency Act of 1996 grants immunity to providers like Automattic for publishing content created by
26 third parties.  *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003)
27 (stating that Section 230 "provides broad immunity for publishing content provided primarily by
28 third parties").

C 14-01656 LB
ORDER                                            10

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [Section 230]." § 230(e)(3). Put another way, computer services merely hosting and providing third-party content are generally immune to state law claims that treat those providers as the "publisher" or "speaker" of that content.

Section 230 immunity is limited by an intellectual property provision which states that "[n]othing in [Section 230] shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). The Ninth Circuit has nevertheless held that state intellectual property claims against service providers are also precluded by CDA § 230. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007); *see also Perfect 10, Inc. v. Giganews, Inc.*, No. C 11-07098 AHM SHX, 2013 WL 2109963, at *15-16 (C.D. Cal. Mar. 8, 2013) (finding claims against service providers for violation of publicity rights under California law barred by Section 230); *but see Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 302 (D.N.H. 2008) (declining to follow the Ninth Circuit and permitting a state-based right of publicity claim that would otherwise be precluded by Section 230).

In *CCBill,* plaintiff Perfect 10, Inc., a magazine publisher, sued defendant CCBill, Inc., an online credit card processing company. *CCBill*, 488 F.3d at 1108. Claiming that CCBill improperly used Perfect 10's copyrighted photos, Perfect 10 brought several state intellectual property claims against CCBill, including an alleged violation of publicity rights of the models in those photos. *Id.* CCBill raised Section 230 as a defense to this claim but the district court denied them immunity. *Id.* On appeal, the Ninth Circuit reversed and held CCBill was entitled to Section 230 immunity against all of Perfect 10's state claims, reasoning that because intellectual property laws vary considerably across states, "permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes." *Id.* at 1118.

//

Here, Plaintiffs allege misappropriation of likeness, also known as the violation of one's right of publicity. Complaint, ECF No. 1-2, ¶¶ 38-43. The right of publicity is intellectual property. *Hebrew Univ. of Jerusalem v. Gen. Motors LLC*, 878 F. Supp. 2d 1021, 1027 (C.D. Cal. 2012) (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322-23 (11th Cir. 2006) (collecting cases and authority for the proposition that the right of publicity is intellectual property)). Because computer service providers in this circuit are entitled to immunity from state intellectual property claims, including the right of publicity, Automattic enjoys immunity from all state claims treating Automattic as a publisher, including Plaintiffs' allegation of misappropriation of likeness.

Plaintiffs' reliance on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011), to refute Automattic's claim to Section 230 immunity is misplaced. In *Fraley*, under a theory of misappropriation of likeness, plaintiffs sued defendant Facebook for using their identities, images, and likenesses to generate targeted advertising. Facebook argued that because it is an "interactive computer service," Section 230 precluded plaintiffs' claim. Ruling against Facebook on Section 230 immunity, the court found that Facebook was liable because plaintiffs were not accusing Facebook of "publishing tortious content, but rather of creating and developing commercial content that violates their statutory right of publicity." *Fraley*, 830 F. Supp. 2d at 801. *Fraley* further held that an "interactive computer service provider" may still be liable for state claims if they are also acting as an "information content provider." *Id.* at 802.

*Fraley* is thus distinguishable from the instant case in that Plaintiffs do not allege that Automattic had a role in "creating or developing" the Blog, commercially or otherwise. *See* Compl., ECF No. 1-2, ¶ 38-43. Nor do Plaintiffs claim that Automattic is the Blog's anonymous writer. *Id.* Indeed, by their own allegations, Automattic's role here was limited to "host[ing], maintain[ing], and administer[ing]" the Blog. Compl., ECF No. 1-2, ¶ 39. As a publisher, Automattic has Section 230 immunity from Plaintiffs' misappropriation of likeness claim relating to content created by the anonymous blogger. *See, e.g., Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 WL 4426359, at *3 (N.D. Cal. Aug. 15, 2013) (granting defendant's motion to dismiss under Section 230 where plaintiffs sued for statutory misappropriation of likeness and defendant was a service provider that did not create content in question).

Plaintiffs' reliance on their breach of contract allegations to support their misappropriation of likeness claim is also unpersuasive. First, as discussed above, Automattic did not breach their Terms of Service because they never promised to remove content violating their rules against impersonation. Second, even assuming that Automattic breached the Terms of Service, Plaintiffs cite no authority to support their proposition that Automattic should therefore also lose their immunity against misappropriation of likeness claims.

In sum, the court finds that Plaintiffs' misappropriation of likeness claim fails. Finding that amending the complaint would be futile, the court dismisses Plaintiffs' third claim with prejudice. *See Swartz*, 476 F.3d at 761.

## CONCLUSION

Accepting all of the complaint's factual allegations as true and construing them in the light most favorable to Plaintiffs, the court **GRANTS** Automattic's motion, dismisses claims one and three with prejudice, and dismisses claim two without prejudice. Because claim two is a contract claim that—if viable—would be a state law claim that would not be barred by section 230 of the Communications Decency Act, *see Barnes*, 570 F.3d at 1108-09, the court declines to exercise supplemental jurisdiction over any amended complaint raising only the state claim. Any amended claim should be brought in state court.

This disposes of ECF No. 11. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 3, 2014     _____
                        LAUREL BEELER
                        United States Magistrate Judge